IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

KENNETH C. TAYLOR, JR.                                                                    PLAINTIFF

v.                                                                                        No. 4:10CV086-A-S

NIKITA WARE AND WEXFORD HEALTH                                                            DEFENDANTS
SOURCES, INC.

MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Kenneth C. Taylor, Jr., who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The defendants have filed a motion to dismiss the case and a motion for summary judgment. Taylor has not responded to the motions, and the deadline for response has long expired. The matter is ripe for resolution. For the reasons set forth below, the motions by the defendants do dismiss and for summary judgment will be granted, and instant case will be dismissed for failure to state a claim upon which relief could be granted.

Procedural Posture

**Taylor I**

Taylor filed his first §1983 lawsuit ("Taylor I") regarding the medical treatment of his eye conditions on March 14, 2008, in the United States District Court for the Northern District of Mississippi against employees of the Mississippi Department of Corrections, Delta Correctional Facility, and Wexford Health Sources, Inc. *Taylor v. Burns*, 4:08CV036-A-S, 2009 WL 1515015 (N.D. Miss. May 29, 2009) aff'd, 371 F. App'x 479 (5th Cir. 2010). Taylor I focused primarily upon alleged delays in receiving post-operative care following his eye surgery in 2005.

Taylor alleged that he lost vision in the left eye due to delays he experienced in having silicone oil removed from the eye after surgery, which he alleges did not take place until his second left eye procedure in March 12, 2007. Much like the present suit, Taylor also alleged at that time that he experienced delays in receiving his prescription Xalatan eye drops, which are used to lower intraocular eye pressure to treat and prevent glaucoma. On May 29, 2009, the court entered a memorandum opinion and judgment dismissing that action for Taylor's failure to exhaust administrative remedies. Id. at [Doc.74-75]. Taylor appealed the dismissal to the United States Court of Appeals for the Fifth Circuit, which affirmed the judgment on March 22, 2010. *Id.* at [Doc.86].

**Taylor II**

Soon after the Fifth Circuit affirmed the district court's dismissal of his previous suit, Taylor filed the present action on July 12, 2010, in this court. See, [Doc.1]. In his complaint, Taylor argues that beginning on the date of his second left eye procedure in March, 2007, through February, 2010, that Wexford and various unnamed or partially identified individuals violated his constitutional right to proper medical care because he continued to experience delays in receiving refills for his prescription eye drops, Xalatan. *Id.*

The court entered an order in this cause requiring Wexford Health Sources, Inc. ("Wexford") to identify the proper names of the individual defendants only generally identified in the Complaint. See, [Doc. 41]. Wexford identified the employees Taylor attempted to sue as "Jane Doe- Pharmacist", "Nurse Ware", and "Jane Doe- medication supervisor nurse." [Doc. 42]. Elizabeth LeFlore ("LeFlore") was the Pharmacist employed by Wexford at Parchman at all relevant times. The person Taylor identified as "Nurse Ware" in his Complaint is Nikita Ware.

*Id.* Finally, Sarah Shahbaz ("Shahbaz") was a medication supervisor employed by Wexford from June 23, 2008 through December 21, 2010. *Id.* Taylor did not, however, state in his complaint or the *Spears* hearing how each of these employees were involved with the refill delays, or what each failed to do with respect to his medical care. *See*, ¶9 to [Doc. 1].

## Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record,

taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Undisputed Material Facts**

The defendants' account of the relevant facts regarding Plaintiff's medical treatment comes from two sources: 1) the Affidavit of Dr. Eric Randle, the Plaintiff's treating optometrist, and 2) the contents of the pertinent medical records of Plaintiff obtained by subpoena from his current facility, the Wilkinson County Correctional Facility. See, [Doc. 51]. The pertinent medical records comprise Exhibit "A" to the defendants' consolidated motions, and the affidavit of Dr. Randle is Exhibit "B" to the consolidated motions. These documents show that Taylor has been continually treated for his eye condition during the times set forth in the Complaint. Though he may have experienced delays at times in receiving his eye drops, those concerns were always addressed when brought to the attention of medical staff and never posed a serious risk.

As set forth in the affidavit of Eric Randle, O.D.:

Mr. Taylor suffered a retinal detachment and had undergone a vitrectomy with placement of silicone oil to his left eye in May, 2005 at the University of Mississippi Medical Center. (Exhibit "A", Bates No. 000372-000373). On April 5, 2006, Mr. Taylor eye was examined again at the University of Mississippi Medical Center. (Exhibit A, Bates No. 000375). At that visit, he reported that since his surgery, he had experienced blurred vision. Mr. Taylor denied pain, floaters, flashes, or double vision. However, he stated that a little white hole appeared in his visual field, if he stared at something too long.

On October 4, 2006, Dr. Eric Randle, his treating optometrist, examined Mr. Taylor's eyes. Based on the examination, Dr. Randle's impression was status post retinal detachment repair, left eye, dense cataract, left eye, and glaucoma, right eye. Dr. Randle further recommended that Mr. Taylor receive a follow-up referral to a retinal specialist and a cataract evaluation. (Exhibit "A", Bates No. 000368). Mr. Taylor was also wrote a prescription for glasses. (Exhibit "A", Bates No. 000379). In accordance with Dr. Randle's referral, Mr. Taylor was again evaluated at the University of Mississippi's McBryde Eye Clinic in January, 2007. His presumed diagnosis was primary open-angle glaucoma. (Exhibit "A", Bates No. 000381).

Primary open-angle glaucoma (POAG), is the most common form of glaucoma, and is associated with an increase in the fluid pressure inside the eye, which may cause progressive damage to the optic nerve and loss of nerve fibers. Primary open-angle glaucoma develops slowly, and may not produce any symptoms. It initially affects peripheral vision, but can advance to central vision loss. If left untreated, glaucoma can lead to significant loss of vision, and possible blindness. Risk factors associated with the development of glaucoma include: age, race, family history of glaucoma, prior eye injury, and certain medical conditions, such as high blood

pressure and heart disease. The medical records reflect that Mr. Taylor has a strong family history of glaucoma. (Exhibit "A", Bates No. 000383).

On March 14, 2007, Mr. Taylor had cataract surgery on his left eye, with placement of an intraocular lens. In addition, the silicon oil that had been placed in his eye during the vitrectomy procedure in May, 2005 was removed. At that time, Mr. Taylor was prescribed Xalatan ophthalmic solution, one drop to his right eye, at hour of sleep. Xalatan is prescribed to patients with glaucoma to decrease the intraocular pressure within the eye. Intraocular pressure readings of 12 to 20 are considered to be within normal range.

Following his surgery, Mr. Taylor returned to the eye clinic and the optometrist for regular eye examinations. A clinic note, dated May 15, 2007, reflects that Mr. Taylor's intraocular pressure was improved after being on his Xalatan drops. He was instructed to continue using Xalatan drops to his right eye at bedtime. (Exhibit "A", Bates No. 000396). Mr. Taylor was examined in the off site eye clinic on August 28, 2007, December 4, 2007, August 26, 2008, and December 2, 2008. (Exhibit "A", Bates No. 000398-000416). On each of those occasions, his intraocular pressure was below 14.5, the target goal set by his treating physician. On August 26, 2008, Mr. Taylor reported that he was compliant with his eye drops. (Exhibit "A", Bates No. 000414).

Mr. Taylor returned to the University Medical Center for an eye examination again on March 24, 2009. (Exhibit "A", Bates No. 000418). He stated that he had been out of Xalatan for four days. However, the clinic note reflects that Mr. Taylor's intraocular pressure was not bad, despite his report that he had been out of his eye drops for a short period of time. His diagnosis was POAG, pseudophakia (intraocular lens), and chronic retinal detachment.

Dr. Randle examined Mr. Taylor on May 17, 2009. (Exhibit "A", Bates No. 000273). Based on the examination, Dr. Randle recommended that he continue using the Xalatan and Timolol eye drops that he had been prescribed.

Mr. Taylor was next evaluated at the off site eye clinic on July 21, 2009. (Exhibit "A", Bates No. 000419). The clinician noted that Mr. Taylor's intraocular pressure in his right eye was under good control with the use of Xalatan and Timolol, despite his report that he had been out of his drops for two days. The intraocular pressure was increased to his left eye, but Mr. Taylor reported no pain. A follow-up clinic appointment to evaluate his intraocular pressures was scheduled for November 10, 2009.

Mr. Taylor returned to the clinic on November 10, 2009. (Exhibit "A", Bates No. 000420-000421). He denied any visual problems such as flashes, floaters, burning or double vision. Mr. Taylor's visual acuity in his right eye was 20/25. The intraocular pressures measurements, obtained by tonometry, in his right and left eye at 9:30 a.m were 15 and 20, respectively. Intraocular pressure readings may vary based on the time of day the pressure reading is obtained, the patient's use of eye medications, and the type of device used to measure the intraocular pressure. Mr. Taylor reported he had last used his Xalatan eye drops the previous evening. He was instructed to continue using Xalatan drops to both eyes, and was scheduled to return to the clinic for an intraocular pressure check on February 2, 2010. (Exhibit "A", Bates No. 000421).

Dr. Randle again examined Mr. Taylor on September 29, 2010. (Exhibit "A", Bates 000158-000160). His intraocular pressures, obtained with a Goldman Tonometer, were 12 and 20, respectively. Mr. Taylor's ocular examination was again within normal limits. Based on my

examination, Dr. Randle's impression was that Taylor's glaucoma was stable. However, Dr. Randle recommended that Taylor continue to receive care at the University of Mississippi Medical Center. Mr. Taylor was instructed to continue his eye drops. (Exhibit "A", Bates No. 000160).

Mr. Taylor's next eye examination occurred on February 9, 2011. (Exhibit A, Bates No. 000423). When he was examined, the intraocular pressure reading in both eyes at 11:20 a.m., was 11, which is within normal limits. He was instructed to continue using Xalatan and Timoptic eye drops.

Mr. Taylor was then examined by David Parker at the Wilkinson County Correctional Facility on December 30, 2011. (Exhibit "A", Bates No. 000191-000194). On that occasion, his intraocular pressure reading was 12 in both eyes, well within normal limits.

Based on Dr. Randle's review of the pertinent medical records, the treatment that he himself provided to Mr. Taylor, and the records of other clinicians who examined Mr. Taylor since his initial diagnosis of glaucoma in 200, it is Dr. Randle's professional opinion that Mr. Taylor's glaucoma has been controlled with medication, and any lapses in the delivery of his eye medications has not resulted in a significant change in the progression of his glaucoma. (Exhibit B, Affidavit of Eric Randle, O.D.).

**Statute of Limitations**

A federal court borrows the forum state's general or residual personal injury limitations period. *Owens v. Okure*, 488 U.S. 235, 249 (1989); *Gartrell v. Gaylor*, 981 F.2d 254 (5th Cir. 1993). In Mississippi, that statute is MISS. CODE ANN. § 15-1-49, which allows a litigant only three years to file such an action, and the statute begins to run "at the moment the plaintiff

becomes aware he has suffered an injury or has sufficient information to know he has been injured." *Russel v. Board of Trustees of Firemen, etc.*, 968 F.2d 489 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 1266 (1993) (citations omitted).

The plaintiff filed the present action on July 12th, 2010 in the United States District Court for the Northern District of Mississippi. [ECF 1]. There is no evidence or argument that he was unable to discover any actionable conduct or that any injury or damage alleged was latent prior to that time. Therefore, the court will apply that statute of limitations. Though the plaintiff has not reasserted his claims from Taylor I, the court wishes to make clear that these claims cannot be litigated in the present case.[1] This removes from the purview of this case the plaintiff's argument that the silicon solution placed in his left eye as part of his 2005 surgery was not removed soon enough as well as the March 14, 2007, surgery that the plaintiff underwent to his left eye to remove the silicon solution and repair a cataract, and his claim that he can no longer see out of his left eye as a result of the alleged delay in removing the silicon solution from him eye between the 2005 and March 14, 2007, eye surgeries.

The limitations also excludes from review the period of time immediately following the surgery on March 14, 2007, during which Taylor claims there was a delay in his receipt of Xalatan eye drops. See [ECF 1, pg. 8]. Taylor alleges that the first order from the hospital for Xalatan was on February 7, 2007. [ECF 1, pg. 8]. Later on the same page, Taylor states: "I received the Glaucoma medication for the first time 56 days after the first order." [ECF 1, pg. 8]. Therefore, according the Taylor's Complaint, which he verified to be true under penalty of

---

[1]In any case, the claims from the previous case would also be barred by the doctrine of *res judicata*.

perjury, fifty-six (56) day delay in receiving Xalatan is outside of the three year window beginning on July 12, 2007, for purposes of the statute of limitations. Taylor's claims arising before July 12, 2007, must be dismissed as outside the § 1983 limitations period.

**Denial of Medical Treatment**

To prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). In cases such as the one at bar, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to

state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S.D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

In the instant case, Taylor alleges only that he experienced delays in receiving his prescription Xalatan eye drops. While he believes the delays have put his sight at risk, his medical records show that at each of his numerous offsite consultations with the optometrist, the interocular pressure in his eye remained good or at target range. In addition, Taylor has not complained that any of the named defendants refused to treat him, or intentionally subjected him to a substantial risk, or that any of the defendants consciously disregarded any of his risks. Indeed, the medical records show that refills for his drops were refilled numerous times, even when the he lost them. Taylor has thus failed to state a valid claim against Elizabeth Lefore, Nakita Ware, and Sarah Shabaz under the Eight Amendment.

Further, Taylor has not alleged that he has actually been harmed by delays in providing his eye drops, a requirement for a claim involving denial of medical care. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir.1993). Here Taylor reveals that "I have been blessed so far that I have not suffered an irreparable damage yet." (ECF 1, pgs. 7-8) (emphasis added). In addition, "I can not continue to have my only eye put at risk because of delay of refilling my medication . . . ." (ECF 1, pg. 5). Taylor's glaucoma has been controlled with medication, and any lapses in the delivery of his eye medications has not resulted in any significant change in the progression of

his glaucoma. (Exhibit B, par. 21). As Taylor has not alleged that delays have caused harm to his vision, his claim for denial of medical care must be denied.

In sum, none of the facts in this case rise to the level of deliberate indifference, and Taylor's allegations of denial of medical care must therefore be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED,** this the 25th day of March, 2013.

                                                   **/s/ Sharion Aycock**
                                                  **U.S. DISTRICT JUDGE**